(No. 20359.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACK LEVINE, Plaintiff in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 5, 1931.*

MARTIN O. WEISBROD, (GEORGE W. SPRENGER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, of counsel,) for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

On January 25, 1928, Jack Levine, Louis Kalles, Albert Portney and Peter Barnes were indicted by the grand jury of Cook county for robbing Max Iczkowitz on the night of November 27, 1927, while armed with a pistol. The three last named defendants were tried on other charges, were sent to the penitentiary and were not tried on this charge. Levine was tried on this charge, was convicted, sentenced to the penitentiary, and a writ of error has been prosecuted from this court to review the judgment.

The evidence shows that Max Iczkowitz ran a delicatessen store at 3259 West Division street, in Chicago. He and his family lived over the store. On November 27, 1927, he closed the store about 12:30 A. M. The front door was locked but the lights were burning. It was raining. There was a kitchen in the rear of the store. Iczkowitz and wife were eating a lunch in the rear of the store. About 1:30 A. M. there was a knock on the front door. Iczkowitz opened the door and admitted a man who drew a gun and ordered him into the kitchen, where he was robbed of a ring valued at $300, a watch, and about $260 in money was taken from the cash register. Iczkowitz immediately notified the police. On the morning of December 17, about 3:30 A. M., Levine and two or three other men were arrested by the police. On December 19 Iczkowitz was called to the police station but he did not identify any of the men arrested. He testified that each man was brought before him separately. Levine was asked by the officers whether he was at Iczkowitz's place at 3259, in the basement, and he answered "yes." Arthur Katt, a police sergeant assigned to the detective bureau, testified that he had a conversation with Levine in the presence of Iczkowitz and officer Echel about the robbery of Iczkowitz's store. Katt asked Levine

if he was not the party on the Iczkowitz job at 3259 West Division street and he answered "yes." On cross-examination counsel for Levine asked Katt these questions: "Had you questioned him [Levine] as to this robbery? Did he admit having been a participant in it?" Katt answered: "He did in my presence, in the presence of Iczkowitz and in officer Echel's presence." After Levine was indicted he was admitted to bail. His case was called several times in the criminal court but he failed to appear, and on August 6, 1928, his bond was forfeited. He voluntarily appeared on January 8, 1930, and the forfeiture was set aside. Between August 6, 1928, and January 8, 1930, the police were searching for him but could not find him. He did not testify in his own behalf.

The question of the sufficiency of the evidence is not urged as a ground for reversal. The only errors urged are (1) that the court erred in giving instructions 5 and 9; (2) that the testimony of Katt as to the commission of other robberies was highly prejudicial; (3) that the court erred in failing to determine whether the admission of Levine was voluntary; and (4) that newly discovered evidence was presented on the motion for a new trial which would warrant its allowance.

The fifth instruction is as follows:

"It is the duty of the jury to consider from the evidence whether any free and voluntary confession was made by the defendant. If you believe from the evidence that any such confession had been made you should subject it to the same tests as are legally applied to other testimony, and it is further the duty of the jury to consider it in connection with all the other evidence in the case."

The objection to this instruction is that Levine made no confession but simply made an admission, and the court should have instructed the jury that a verbal admission should be received with care and caution. The instruction did not tell the jury that Levine had made a confession.

It merely told the jury that it was their duty to consider from the evidence whether any free and voluntary confession was made, and it also told them how to test and consider it. The fact that a robbery had been committed was clearly proved. Levine was accused of this crime. If the evidence on behalf of defendant in error is to be believed he admitted his guilt. An admission of guilt is a confession of guilt. The abstract fails to show a single objection or exception by Levine or his counsel to the introduction of this evidence. The instruction was properly given, and if Levine wanted any cautionary instructions given he should have presented them to the court.

The ninth instruction is as follows:

"Flight of a defendant soon after the commission of an offense is proper legal evidence to show consciousness of guilt on the part of such defendant."

It is conceded that this instruction states a correct rule of law, but it is insisted that a forfeiture of a bond almost a year after the crime was committed cannot be construed to mean a flight soon after the commission of the offense; that the instruction is bad because it stresses only one fact in the evidence—relating to flight; that the State's attorney stipulated that Levine voluntarily surrendered in open court on January 8, 1930, and this element should have been included in the instruction. The bond was forfeited on August 6, 1928. There is no evidence when the bond was given or when Levine was released from jail, but there was evidence that the case had been set for trial several times before the bond was forfeited and Levine failed to appear. After his bond was forfeited he was gone over seventeen months, during which time he was sought by the police without success. There was no error in giving the instruction and plaintiff in error was not injured thereby.

Upon the cross-examination of Katt he said that Levine "denied everything at first until he was confronted with things that proved him otherwise." This last remark was

stricken by the court without an objection having been made to it and the jury was instructed to disregard it. Later, counsel for Levine said: "I would like to get this straight. I think you said that he denied until he was confronted in this particular case. Is that right? Is that what you said?" Katt replied: "No, I am talking about other cases. You asked me the conversation I had with him. You are taking in the whole territory." It is urged that the statements regarding other offenses were prejudicial and warranted a new trial. The expression used by the officer that Levine denied everything until he was confronted with other things was promptly stricken by the court and the jury was instructed to disregard it. The last remark was brought out again on cross-examination by counsel for Levine. There were no objections or exceptions to either of these remarks and no motion was made to exclude them. In view of the fact that counsel was responsible for the answers and no objections were made to them they do not constitute reversible error.

Complaint is made that the court should have made an investigation to determine whether the admission of Levine was voluntary. The attorney who tried the case is not representing Levine in this court. The attorney in the trial court was not appointed by the court but was employed by friends of Levine. On the trial no objections were made to the testimony of the police officer concerning the admissions made by plaintiff in error on the ground that they were not voluntary. That question was not called to the attention of the trial court, and the trial court was under no obligation to investigate that question unless it was asked to do so. After the trial the attorney who tried the case filed an affidavit in which he set up a misunderstanding by him of a statement made by an assistant State's attorney with reference to Levine having made a statement to the police. The attorney also filed as newly discovered evidence an affidavit of Hyman Steinberg, one of the men

arrested with plaintiff in error on the night of December 17, in which affidavit Steinberg alleged that he and Levine were struck, abused and subjected to tear gas after their arrest. Levine from the beginning knew just what took place after his arrest. He knew just what statements were made by him to the police and knew just what treatment he received from the police. If he was abused in order to make him confess he was aware of that fact before the trial. It was his duty to inform his attorney as to all of these facts. He will not be permitted to sit idly by during the trial, let his attorney try the case without this information, and then secure a new trial on the ground of newly discovered evidence which he knew about during the trial.

The judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*