People of the State of Illinois, Plaintiff-Appellee, v. William E. Durham, Defendant-Appellant.

Gen. No. 65–64.

Third District.

December 28, 1965.

Peter M. Soble, of East Moline, for appellant.

Richard J. Stengel, State's Attorney, of Rock Island, for appellee.

ALLOY, P. J.

This cause is before us on transfer from the Illinois Supreme Court.

Defendant, William E. Durham, appeals from a conviction and sentence following an indictment for burglary from the Rock Island County Circuit Court.

Defendant in this cause was indicted along with a Richard Smith for the burglary of a food market located in Rock Island, Illinois. After a plea of not guilty, Defendant was tried separately before a jury and a guilty verdict was returned. A motion for new trial was denied and defendant and the codefendant, who was tried separately and found guilty of the same offense, were sentenced to terms of not less than five years nor more than 30 years in the Illinois State Penitentiary.

It appears from the record that on November 11, 1961, at approximately 10:15 p. m., two police officers who had received a call that a light was out at the southeast door of the food market, went immediately to the store. The store building had been locked at 8:30 p. m.

An officer who approached the door at the east end of the south side of the building found it to be open about two feet and the light above it was not on. The door had been broken open and bore pry marks which ap-

164

peared to come from a heavy instrument such as a screw driver. This was the door through which defendants had entered the building. After the officers waited outside of the building listening for two to four minutes, one officer entered and checked the storeroom to the rear and east part of the building proceeding the entire distance to the northeast wall. He then went to the west part of the building, that is the store proper, and used the telephone to call for police assistance. The front of the store and the storeroom were fairly well lighted but the office which was about eight feet by ten feet in dimension and situated against the north wall of the building was dark. After the officer had finished telephoning, he heard a noise and went to check the office. He used his flashlight in the office and observed the Defendant William E. Durham crouched behind a safe in the southeast corner of the office and the codefendant hiding behind some boxes stacked along the east wall. He asked the defendants three or four times to stand up and hold their hands up but they did not comply. The officer then broke a window pane in the French door with his pistol and repeated the request. Another officer thereafter came in and assisted the first officer in handcuffing the defendants. Neither defendant explained his presence in the building to the officers.

The only money in the store was in the office safe. A few small drawers had been pulled out of a desk and there were some items from the drawers, such as Christmas Club books, lying around on top of the desk.

Defendant William E. Durham took the stand and testified that he and his partner Smith had been walking near the premises that night and were on their way to a tavern but lost their way. He stated they heard a noise like a door closing and saw a man running from a door in the food store so they went to investigate. He stated that they entered through an open door and their attention was first attracted to the French door that led to

the office, and that he and his partner went into the office. Shortly thereafter, he observed a police officer who came into the building and searched it. Although Defendant Durham was acquainted with this officer he said nothing to him until after he and his partner were arrested. They did not explain their presence in the building to the police officers at any time after they were arrested. Defendant stated that he hid behind the safe fearing bodily harm. There was no evidence that any property had in fact been taken from the premises.

After the defendant had taken the stand in his own behalf, the Trial Court permitted the reading into evidence of a prior conviction of defendant over objection of his attorney. The State's attorney informed the Judge out of the presence of the jury, that the prior conviction was to be read for impeachment purposes only. Neither defendant nor the prosecution tendered an instruction to the jury to the effect that the prior conviction was admitted into evidence for impeachment purposes only.

On appeal in this court, defendant contends, first, that the State did not prove intent beyond a reasonable doubt, and, secondly, that the failure of the Trial Court to inform the jury that the purpose of reading of defendant's prior conviction of burglary into the record was for impeachment purposes only and that such failure constitutes reversible error even though no such instruction was tendered on behalf of defendant.

On the basis of the record before us, it is apparent that the food market was forcefully entered on the night of the offense and that shortly thereafter, defendant and his partner were found crouched behind the safe and some boxes in the store office. It was argued, and is possible under the state of the evidence, that defendant entered the building without force, but even under such state of facts it would have been possible for the jury to conclude on the basis of the evidence in the record, that defendant had entered willfully with

166

intent to commit a theft. The question of defendant's intent is a matter which must be resolved from an examination of all of the facts and circumstances surrounding the offense (People v. Johnson, 28 Ill2d 441, 192 NE2d 864). The fact that no property was actually taken would not prevent a finding that the offense was burglary if the building was entered with felonious intent (People v. Clark, 30 Ill2d 216, 195 NE2d 631; People v. Figgers, 23 Ill2d 516, 179 NE2d 626). Criminal intent of the character with which we are concerned, must ordinarily be proven circumstantially, by inferences drawn from the conduct and the facts before a jury. The facts and circumstances which existed in the present case involving the presence of defendant and his partner hiding behind the safe and boxes in the unlighted office, the only place where the money was kept in the store (and remaining silent and refusing to obey the officer) could have justified the jury in concluding that defendants were guilty and that no reasonable person would investigate a burglary in this manner (People v. Woods, 26 Ill2d 557, 188 NE2d 1). The fact that the office desk drawers were on top of the desk with the contents, could have been determined by the jury to be corroborative of the intent on part of Defendants to seek items of value which they could take.

██ It is apparent that the jury did not believe defendant's story about seeing a man running out of the rear door of the store and that defendant and his companion simply went to investigate. This court, on review of a conviction in a criminal case of the type before us, is not justified in reversing unless the evidence is palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt (People v. Lobb, 17 Ill2d 287, 161 NE2d 325). Under circumstances such as these, the court cannot substitute its judgment for that of the jury.

■ ■ The other issue before this court is whether or not the admission into evidence of defendant's prior conviction of burglary without an instruction as to the purpose of such evidence, constituted reversible error under the facts in the record before us. It is obvious that defendant would have been entitled to have an instruction given to the effect that such conviction is to be considered solely for the purpose of impeachment had such an instruction been tendered. Defendant seriously contends that even though he failed to tender or request such an instruction to the jury concerning the limited purpose of the evidence of the prior conviction, it is nevertheless incumbent upon the court on its own motion to give such instruction or even on the prosecution to tender such instruction. In People v. Brand, 415 Ill 329, 114 NE2d 370, the Supreme Court had a similar problem before it. In that case, evidence of prior similar offense had been admitted without a jury instruction as to limited purpose of such evidence. The court in that case stated (at Page 339) :

> "The admission of such evidence is subject to the limitation that it may be considered by the jury only in determining the intent of the accused. Defendants insist that the court had an affirmative duty to admonish or instruct the jury that consideration of the testimony as to those other offenses should be limited to the question of defendants' intent, and they also contend that the court should have instructed the jury that the evidence of the Baker and Brunk cases should be disregarded as far as the defendant Brand is concerned. No affirmative duty to admonish or instruct the jury attaches to the court because evidence of such a nature is introduced, and the defendant having failed to invoke the ruling by exception or by request for admonition or instruction cannot now complain."

168

To the same effect are People v. Baker, 8 Ill2d 522, 134 NE2d 786, and People v. Wheeler, 57 Ill App2d 452, 206 NE2d 727. It may very well have been the conclusion of counsel for defendant, that to tender an instruction and have the jury instructed that evidence of the prior conviction of burglary was to be considered for impeachment purposes only, would not, in fact, redound to defendant's advantage, but rather to his disadvantage by emphasizing the conviction or otherwise discrediting defendant's testimony more effectively than would be the case if no instruction were given. On the basis of the record in this cause, there was no reversible error in the failure of the court on its own motion or the prosecution on its motion, to tender such an instruction to the jury in absence of a request for such instruction or direction to the jury by defendant.

There being no reversible error in the record, the judgment and the sentence of the Circuit Court of Rock Island County will, therefore, be affirmed.

Affirmed.

STOUDER and CORYN, JJ., concur.